## THE TAMBOV. THE PICKWICK. THE M. MITCHELL DAVIS.

### (District Court, D. Maryland. March 21, 1919.)

COLLISION ⊂⊃95(2)—FAULT—STARBOARD HAND RULE.

Tug with scows in tow, which collided with steamer, which, after signal, was being backed out of slip in Baltimore harbor, preparatory to getting on her definite course, *held* solely at fault in not keeping out of way; the starboard hand rule having no application.

In Admiralty. Libel by Arthur Hopwood, master of the steamship Tambov, against the steamer tugs Pickwick and M. Mitchell Davis. Dismissed as to the M. Mitchell Davis; sustained as to the Pickwick.

George Forbes, of Baltimore, Md., and Chauncey I. Clark, of New York City, for libelant.

Harry N. Abercrombie, of Baltimore, Md., for the M. Mitchell Davis.

Clarence A. Tucker and John B. Deming, both of Baltimore, Md., for the Pickwick.

ROSE, District Judge. Shortly before 6 o'clock on the afternoon of October 3d last, the British steamship Tambov was struck and injured by a scow in tow of the tug Pickwick. The steamship had been lying, bow in, along the northerly side of the Pennsylvania Railroad Company's old coal pier in the Canton section of the Baltimore harbor. She was loaded and ready to go to sea. The tug M. Mitchell Davis was engaged to assist her in getting out of the dock and turning around. The Davis had pulled her directly westward into the stream, until her bow was somewhere from 50 to 200 feet to the west of the head of the pier at which she had been lying. Including her bowsprit, she was about 410 feet long. It is possible that her stern, at the time of the collision, was as much as 610 feet west of the end of the pier, which end, however, was 150 feet east of the pier head line, so that the stern of the steamship was not, at the outside estimate, more than 460 feet to the west of the pier head line, and according to some of the witnesses not more than 360 feet.

The Davis had a line from the port quarter of the steamship to her own stern. While pulling the steamship out in the position indicated,

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

she had necessarily herself headed westerly. After the steamship was safely clear of the pier, she stopped, and turned towards the north and east for the purpose of drawing the steamship's stern around in these directions, and thereby bringing her stem to the south and west, so that she would be headed on her course to the sea.

According to the engine-room log of the steamship, three minutes before the collision her starboard engine had been put half astern, in another minute her port engine full ahead, and a minute before the collision her starboard engine had been stopped, and at once put full ahead, so that, at the time of the collision, both engines had been going ahead for about a minute, be it more or less.

Before starting out of the dock, the tug had blown one long blast to indicate that she was coming out. The blast was heard and understood by the Pickwick when the latter was at least 1,400 feet from the steamer. The Pickwick was coming down the harbor parallel to the pier head lines, towing three mud-laden scows. The master of the Pickwick knew what the whistle meant, saw the tug pull the steamship out, and kept right down on her. He says he kept going off to starboard rather steadily, but those on the ship thought he did not change his course. He was ordinarily the first officer of the tug, and was in command for that day only. He clearly thought it was a case for the application of the starboard hand rule; that he was the privileged vessel, and it was the business of the steamship to keep out of his way. There was no reason in the world why he should not have gone several hundred feet further to the westward. He thought he had the right not to do so, and he did not. He got by the stern of the steamer and over to its starboard side, but his leading scow struck the port side of the steamer some 35 feet forward of its stern. He says this was because the steamship backed across his towline.

It may possibly be that the steamer was moving backward at the time, although I am by no means sure of it, and I am confident that the movement of the stern westward could not at that time have been at all rapid. After he himself passed the steamer, he says he steadied on his course. Whether that meant he made some slight change in it I do not know. Almost immediately thereafter he stopped.

The wind was in such a direction that whatever force it would exert would tend to throw the scows down towards the ship, and the rearmost one of the scows was down by the head, so that the stern had a considerable freeboard which was exposed to the wind. The possible change of the tug's course and its admitted stopping gave the scows an opportunity to sag down, but I do not think it necessary to go into a minute inquiry as to such difference as there may be as to the circumstances in the last minute or thereabouts before the collision, because, independently of what view may be taken of them, the responsibility for the collision is quite clear. The captain of the Pickwick knew that the steamer was being pulled out, and that she would require at least all the room that she did take for that maneuver. He unnecessarily chose to keep a course which would carry him into danger. The starboard hand rule has no application to a steamship backing out of her slip preparatory to getting on her definite course.

The Bouker No. 2, 254 Fed. 579, —— C. C. A. ——, and cases therein cited.

The steamer libeled both of the tugs, but clearly the M. Mitchell Davis was not in fault. If anybody but those in command of the Pickwick were to blame, it could only be on the theory that the steamship ought not to have backed on her engines. The captain of the Davis had nothing to do with the engine movements of the steamer, and gave no orders concerning them. Nor do I think that the steamer is to blame. She did nothing except that which she was perfectly justified in doing, nor do I see that she ought reasonably to have anticipated the fault of the Pickwick at a time early enough to have enabled her to have done anything to prevent the collision.

It follows that the libel as against the M. Mitchell Davis must be dismissed, and the Pickwick held solely in fault.